IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 12, 2016 Session

**STATE OF TENNESSEE v. JOHN FREITAS**

**Appeal from the Criminal Court for Shelby County**
**No. 15-02390     W. Mark Ward, Judge**

---

**No. W2015-02492-CCA-R3-CD  -  Filed October 7, 2016**

---

The defendant, John Freitas, was convicted by a Shelby County Criminal Court jury of assault and domestic assault, both Class A misdemeanors, and sentenced to consecutive terms of eleven months and twenty-nine days in the county workhouse.  On appeal, he argues that:  (1) the evidence is insufficient to sustain his convictions; (2) his convictions for assault and domestic assault violate double jeopardy; and (3) the trial court abused its discretion by imposing consecutive sentences.  After review, we conclude that it violates double jeopardy for the defendant to receive punishments for assault and domestic assault.  Therefore, we order that the defendant's convictions stand but that amended judgments be entered showing that the simple assault conviction merges into the domestic assault conviction for imposition of one sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Stephen C. Bush, District Public Defender; Barry W. Kuhn (on appeal) and Trent Hall (at trial), Assistant Public Defenders, for the appellant, John Freitas.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; Omar Z. Malik and Jamie B. Kidd, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTS

As a result of his assault on his ex-girlfriend, the defendant was indicted for one count of aggravated assault by strangulation and one count of domestic assault by inflicting bodily injury.

The victim testified that she and the defendant previously dated and had a child together. They also lived together at one time, but they no longer did so and had been separated for almost three years. On March 1, 2015, the victim was working at Lakeside Behavioral Health System and had arranged for the defendant to drop off their four-year-old-daughter at her workplace when she got off of work. The victim called the defendant to let him know that she would be late getting off work, and the defendant became angry because he had to work the next morning. He told her that she was going to have to drive to West Memphis to pick up their daughter from him.

When the victim got off work around 9:30 p.m., she went to her car and called the defendant to see where he was. The defendant told her that he was parked next to her, and she looked around and saw him and their daughter in the defendant's truck. The victim told the defendant that she had left her jacket in another building and was going to drive over and get it and would then get their daughter. She drove over to the other building, parked, and got out of the car. The defendant, who had also driven to the other building, got out of his truck and "began screaming and yelling at [her]." The defendant was mad because he learned that a close male friend of the victim's had already picked up the victim's son. The defendant advanced toward her and yelled that "if [she] didn't get [her] shit together, that there were going to be dire consequences and that it was going to be [her] wors[t] nightmare."

The victim testified that she was scared and told the defendant that she just wanted to get their daughter and go home, but the defendant kept yelling at her. He finally told her to get their daughter, but, when she tried to get the child, the defendant advanced toward her again. This time the defendant was so close he was spitting in her face as he yelled. The victim tried to go around the defendant to get to the truck, brushing the left side of her body against him in the process, but the defendant threw her to the ground and

> [h]e got on top of me and he had part of his arm or hand it was across my face and part of it was in my mouth because my mouth was wide open to where I couldn't bite to get away from him. I couldn't close my mouth and he was strangling me with his other hand.

2

The defendant used his left hand to strangle her, applying "hard" pressure to the point where she could not breathe. The defendant was still yelling at her, and she thought that she was going to die. She could not tell how long the defendant had his hand around her throat and mouth. The next thing the victim remembered was getting up and running, and she thought that the defendant might have let her up because she had previously been unable to move. She ran into a nearby building, and the police were called. As she ran away, she recalled the defendant's making a "veiled threat" that she "just needed to take [her] daughter and go home and that if he got arrested, something about it was all on [her]."

The victim identified photographs of her throat taken by the police after the attack, showing redness and swelling. She also sustained muscle injuries to her lower back and left side of her neck. The victim admitted that she did not go to the hospital for treatment after the incident, but she later sought treatment from her doctor when she realized her pain and soreness had worsened. She also admitted that she declined a ride to the police station to take out a domestic violence warrant against the defendant, but she explained that the defendant was arrested at the scene so she thought she was just declining to go to the hospital.

Officers Jessica Lawbacker and Robert Reed with the City of Bartlett Police Department responded to the scene. The defendant was still at the scene, sitting in his vehicle, when Officer Lawbacker arrived, and she detained him. The victim was visibly shaken, crying, and scared about what had happened. The officers observed injuries on the victim's nose, chin, neck, chest, and inside her mouth. Officer Lawbacker photographed the victim's injuries. After speaking with the defendant and the victim, Officer Reed arrested the defendant. Officer Reed recalled that the defendant said that the victim pushed him, and he denied striking or choking the victim.

The defendant testified that, on the night in question, the victim called him and asked him to bring their daughter to the victim's place of work because a male friend of the victim's was going to pick up their daughter and the victim's son. When he arrived to the victim's place of work, the two of them got into an argument about the victim's male friend. He said that the victim pushed him with her left arm "in a kind of a stiff-arm football blocking maneuver," and he grabbed her hands and wrapped them around her. The two of them fell to the ground, and the victim began screaming. He covered her mouth with his right hand, while he remained on top of her as they had fallen. The victim got up and ran inside the building; the defendant did not think that he screamed at her but did tell her that it would affect both of them if he were arrested. The defendant said that he did not strike or choke the victim, but he could not explain how the victim sustained injuries to her neck and lip.

3

Following the conclusion of the proof, the jury convicted the defendant of the lesser-included offense of assault in the first count and of domestic assault as charged in the second count.

The trial court conducted a sentencing hearing, at which the State provided proof that the defendant had two prior convictions for aggravated assault in Louisiana in 1998. It was unclear whether the offense was a felony in Louisiana, but the trial court noted that the statute defined aggravated assault as assault committed with a dangerous weapon, which would be a felony if committed in Tennessee.

The victim testified that the first incident of violence exhibited to her by the defendant occurred in June of 2008 when the defendant assaulted her and her son, who was four years old at the time. She elaborated that the defendant "picked up [her] son and slammed him down" and then "began verbally abusing [her] son, telling him he was a piece of shit and never going to be anything more than that, just like his father." The defendant "backhanded [her], twice, in the face and blood[i]ed [her] nose up really good." She believed that he broke her nose. She did not call the police because they were in Louisiana at the time, and she "was scared and . . . made a stupid decision and didn't report it." However, she did take photographs of the injuries.

The victim testified that, since that first incident, the defendant had slammed her against a door when she was pregnant with their daughter. He shoved her into things on numerous occasions. He had been verbally and emotionally abusive over the years. The victim was "on the second order of protection that [she had] gotten against him since [they] broke up. As soon as the first order was up, he just started . . . harass[ing] [her] constantly" with "text messages, phone calls, [and] just continuous fights." On cross-examination, the victim admitted that she and the defendant both continued to work at Lakeside during the period of the first order of protection. They worked different days and shifts and handled transferring their child through family members or a child care center.

Relying on State v. Smith, 436 S.W.3d 751 (Tenn. 2014), the trial court determined that it appeared the convictions for assault and domestic assault should not merge. Accordingly, the court imposed a sentence of eleven months and twenty-nine days for each conviction and ordered that the terms be served consecutively.

# ANALYSIS

## I. Sufficiency

The defendant first challenges the sufficiency of the convicting evidence as to both offenses. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of assault as a lesser-included offense of aggravated assault. As charged by the trial court, assault is intentionally or knowingly causing bodily injury to another or causing another to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101(a)(1), (2). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the

5

function of a bodily member, organ, or mental faculty[.]"  Id. § 39-11-106(a)(2).  In its verdict, the jury specifically found that the defendant caused bodily injury to the victim and caused her to reasonably fear bodily injury.

The defendant argues that the "slight abrasion" on the victim's nose and the "slight discoloration" on her neck are insufficient to corroborate "the kind of assault described by [the victim]."  The very definition of bodily injury includes abrasions and bruises.  The jury heard the victim's testimony and saw photographs of her injuries, and it determined that the victim had sustained bodily injury.  In addition, the jury could find that the victim reasonably feared bodily injury when the defendant charged her and forced her to the ground.  The proof is sufficient to sustain the defendant's conviction for assault.

The defendant was also convicted of domestic assault, which is defined as intentionally, knowingly, or recklessly causing bodily injury to a domestic abuse victim.  Tenn. Code Ann. § 39-13-111(b).  A domestic abuse victim includes adults who have lived together, and adults who have dated or had a sexual relationship.  Id. § 39-13-111(a)(2), (3).

The defendant asserts that the victim should not be considered a domestic abuse victim because they had not lived together for almost three years prior to the incident.  However, the statute contains no time limitation on when the prior relationship must have occurred, nor are we aware of any case law providing for such limitation.  In addition, the evidence showed that the victim and the defendant had a child together, and therefore there was proof for the jury to find that they once had a sexual relationship.  The evidence is sufficient to sustain the defendant's conviction for domestic assault.

## II.  Double Jeopardy

The defendant argues that his convictions for assault and domestic assault violate double jeopardy because the violations arose out of the same act and "each offense does not contain an element not contained in the other."

The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]"  U.S. Const. amend. V.  Article I, section 10 of the Tennessee Constitution similarly provides "[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb."  Our supreme court has recognized that the Double Jeopardy Clause provides three separate protections:  (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same

offense. State v. Watkins, 362 S.W.3d 530, 541 (Tenn. 2012). This case involves the last of these three categories.

"In single prosecutions, multiple punishment claims ordinarily fall into one of two categories, . . . referred to as 'unit-of-prosecution' and 'multiple description' claims." Id. at 543. "[M]ultiple description claims arise when a defendant who has been convicted of multiple criminal offenses under different statutes alleges that the statutes punish the same offense." Smith, 436 S.W.3d at 766 (citing Watkins, 362 S.W.3d at 544). By contrast, unit-of-prosecution claims arise "when defendants who have been convicted of multiple violations of the same statute assert that the multiple convictions are for the 'same offense.'" Watkins, 362 S.W.3d at 543. The defendant's assertion in this case presents a multiple description claim.

In Watkins, the Tennessee Supreme Court abandoned the State v. Denton, 938 S.W.2d 373 (Tenn. 1996), four-factor test previously employed by Tennessee courts in determining whether dual convictions violate the prohibition against double jeopardy. Instead, for multiple description claims, the court adopted the same elements test enunciated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932). Watkins, 362 S.W.3d at 556. Under the Blockburger test, the first step is to determine whether the convictions arise from the same act or transaction. Watkins, 362 S.W.3d at 545. If the convictions arose from the same act or transaction, the court must then determine whether the legislature intended to allow the offenses to be punished separately. Id. at 556. When the legislature has not clearly expressed its intent either to prevent or to preclude the dual convictions, the court must examine the statutes to determine whether the crimes constitute the same offense. Id. at 557. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy. Id.

Whether multiple convictions violate double jeopardy is a mixed question of law and fact that we review *de novo* with no presumption of correctness. Smith, 436 S.W.3d at 766 (citing State v. Thompson, 285 S.W.3d 840, 846 (Tenn. 2009)).

In Smith, our supreme court addressed a situation where the defendant violated, on different days, three different subsections of the false reporting act. 436 S.W.3d at 766-67. The court held that the three different subsections of the statute each contained elements not found in the other subsections and therefore constituted separated crimes, such that the legislature intended to permit multiple punishments. Id. at 767-68.

In this case, relying on Smith, the trial court held that it appeared that the defendant's convictions for assault and domestic assault should not merge because they were different crimes, and the holding in Smith permitted separate convictions for

7

different crimes arising out of the same act. However, the defendant asserts that "since every element of the offense of assault is contained in the offense of domestic assault, it is a lesser included offense of . . . domestic assault. Sentencing the defendant on both statutes would violate the double jeopardy clause[]."

The State responds that because the jury returned a verdict of guilty of assault by both causing bodily injury to the victim and causing her to reasonably fear bodily injury, it essentially found the defendant guilty of two forms of assault, either of which could independently support a conviction. The State continues that the trial court charged the jury that domestic assault is causing bodily injury to a domestic abuse victim. Therefore, the State asserts that the assault conviction under either theory did not require the element of a domestic abuse victim, and one of the theories of the assault conviction did not require the element of reasonable fear of imminent bodily injury. Accordingly, the State concludes that even though the convictions were based on the same act, they each have an element not required of the other.

We are not persuaded that the holding in Smith allows for separate convictions in this case, given that application of Blockburger leads to the conclusion that the legislature did not intend to permit multiple punishments. Under Blockburger, we examine statutory elements of the offenses "in the abstract, without regard to the proof offered at trial in support of the offenses." Watkins, 362 S.W.3d at 544. "If each offense includes an element that the other offense does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Id. (quoting Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975)) (internal quotation marks omitted).

Again, the first step in the Blockburger test is to determine the threshold question of "whether the convictions arise from the same act or transaction." Watkins, 362 S.W.3d at 556. "If the convictions do not arise from the same act or transaction, there cannot be a violation of the double jeopardy protection against multiple punishment." Id. In this case, the convictions arose from the same act or transaction, leading us to the second step of the test.

The second step of the Blockburger test requires us "to examine the statutory elements of the offenses." Watkins, 362 S.W.3d at 557. The following presumptions apply to our examination of the statutory elements of the offenses:

If the elements of the offenses are the same, or one offense is a lesser included of the other, then we will presume that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy. However, if each offense includes an element that the other does not, the statutes do not define the "same offense" for double

8

jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments.

Id. (footnote omitted).

All of the elements of assault are, by definition, included in domestic assault, as domestic assault is defined as an assault committed against a domestic abuse victim. See Tenn. Code Ann. § 39-13-111(b). Moreover, even though domestic assault includes an element that assault does not, the reverse is not true, such that *each* offense does not include an element that the other does not. Accordingly, application of Smith in this case would return an illogical result, and the defendant's receiving two punishments for the same offense would violate double jeopardy.

Therefore, we order that the defendant's convictions stand, but that amended judgments be entered showing that the simple assault conviction merges into the domestic assault conviction, for which the legislature has provided more onerous punishment, and imposition of one sentence.

### III. Sentencing

The defendant argues that the trial court erred in ordering that his sentences be served consecutively, asserting that the sentence is excessive because the victim was only assaulted one time and her injuries were minor. In light of our conclusion above that the simple assault conviction should merge into the domestic assault conviction, this issue is pretermitted. However, in the event of subsequent appellate review, we address the defendant's consecutive sentencing issue.

The trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that any one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) apply, including the one the trial court found applicable in this case – that the defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. Tenn. Code Ann. § 40-35-115(b)(4).

When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995). Our standard of review for a trial court's order of consecutive

9

sentencing is abuse of discretion with a presumption of reasonableness. State v. Pollard, 432 S.W.3d 851, 859-60 (Tenn. 2013).

In ordering that the defendant's sentences be served consecutively based on finding him to be a dangerous offender, the trial court determined that the circumstances of the offense were aggravated in that the defendant choked the victim and put his hand over her mouth, essentially committing aggravated assault despite the jury's verdict to the contrary. The court found that an additional period of confinement was necessary to protect society from the defendant's unwillingness to lead a productive life and related to the seriousness of the offense.

The trial court accredited the victim's testimony that the defendant had a history of beating and assaulting both her and her son. The photographs of a prior assault on the victim by the defendant were entered into evidence at the sentencing hearing and show the victim's clothing covered in blood. The defendant also has prior convictions for aggravated assault involving a deadly weapon. This history, combined with the defendant's strangulation of the victim that was found by the trial court to have occurred by a preponderance of the evidence, indicate that the defendant had little regard for human life and posed a threat to society. The trial court did not abuse its discretion in ordering that the defendant's sentences be served consecutively.

## CONCLUSION

Based on the foregoing authorities and reasoning, we conclude that it violates double jeopardy for the defendant to receive punishments for both assault and domestic assault. Therefore, we order that the defendant's convictions stand, but that judgments be entered showing that the simple assault conviction merges into the domestic assault conviction for imposition of one sentence.

_____
ALAN E. GLENN, JUDGE

10